UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CATON, | Case No. 4:23-cv-05451-KAW |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY OF PLAINTIFF'S EXPERTS** |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | Re: Dkt. No. 57 |

On February 19, 2026, Defendant United States filed a motion to exclude certain testimony of Plaintiff's experts. (Def.'s Mot., Dkt. No. 57.)

On April 16, 2026, the Court held a hearing, and, after considering the arguments made in the briefing and at oral argument, GRANTS IN PART AND DENIES IN PART Defendant's motion to exclude certain expert testimony.

## I.    BACKGROUND

### A.    Brief Factual Background[1]

On October 5, 2022, Plaintiff John Caton, then 77 years old, was crossing the street, when he was struck by a USPS postal truck.  Plaintiff was transported to John Muir Medical Center and diagnosed with a head laceration; closed fracture of his right acetabulum (part of the pelvis that interfaces with the femur); right pelvic fracture; multiple rib fractures and fractures to thoracic vertebrae T8-T11; mild fractures of lumbar vertebrae fractures of L1, L2, L3, and a closed nondisplaced fracture of his second cervical vertebrae C2. (*See* Pl.'s Interrogatory Responses, Decl. of Roman A. Swoopes, "Swoopes Decl.," Dkt. No. 57-2 ¶ 3, Ex. 1; 7/31/25 Report,

---

[1] The facts are largely undisputed. The dispute arises in connection with the extent of Plaintiff's injuries and whether they can all be attributed to the collision.

Swoopes Decl. ¶ 5, Ex. 3 at 3.)

Plaintiff spent five days in the hospital, where he underwent initial physical therapy and occupational therapy before being transferred to a skilled nursing facility. (7/31/25 Report at 3.) At the skilled nursing facility, Plaintiff continued therapy for mobility and activities of daily living. *Id.* When Plaintiff was discharged on November 18, 2022, he could walk with a front-wheel walker. *Id.* After discharge, Plaintiff initially received in-home physical therapy, before transitioning to outpatient physical therapy from December 30, 2022, to March 1, 2023. *Id.* at 4. The therapist initially focused on his hip and pelvis and later shifted attention to his cervical spine when it was more stable. *Id.*

In this litigation, Plaintiff claims injury to and future medical care needs for not just his right hip and cervical spine, but also for his right shoulder, right foot and ankle, right thumb, and spine. (*See* Def.'s Mot. at 3.) While the parties agree that Plaintiff injured his hip in the collision and required treatment, the parties dispute which of his other body parts were injured due to the collision, as well as the appropriate course of treatment. *Id.*

Plaintiff submitted expert reports from two retained experts in this case: Dr. Piers Barry, an orthopedic surgeon who examined Plaintiff and his medical records; and Dr. Kelly S. Harvey, a life care planner who estimated medical costs. Dr. Barry submitted five expert reports in this case, dated: November 29, 2024; December 20, 2024; April 8, 2025; July 31, 2025; and September 16, 2025. The April 8, 2025 and July 31, 2025 reports contain his causation opinions. (4/8/25 Report, Decl. of Roman A. Swoopes, "Swoopes Decl.," Dkt. No. 57-2 ¶ 4, Ex. 2; 7/31/25 Report, Swoopes Decl. ¶ 5, Ex. 3.) Dr. Harvey's life care plan report estimated the cost of carrying out Dr. Barry's treatment plan. (Dr. Harvery's Report, Swoopes Decl. ¶ 10, Ex. 8.)

### B.    Procedural Background

The deadline for the parties to designate expert witnesses was August 13, 2025. (Dkt. No. 42.) Rebuttal reports were due by August 27, 2025. *Id.* Expert discovery closed on January 16, 2026. (Dkt. No. 55.)

On February 19, 2026, Defendant filed the instant motion to exclude certain expert testimony. (Def.'s Mot., Dkt. No. 57.) On March 3, 2026, Plaintiff filed an opposition. (Pl.'s

United States District Court
Northern District of California

Opp'n, Dkt. No. 58.)  On March 12, 2026, Defendant filed a reply. (Def.'s Reply, Dkt. No. 59.)

## II.    LEGAL STANDARD

Under Federal Rule of Evidence 702, a witness may offer expert testimony if the witness "is qualified as an expert by knowledge, skill, experience, training, or education," and the proponent of the witness demonstrates to the court it is more likely than not:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "These criteria can be distilled to two overarching considerations: 'reliability and relevance.'" *Int'l Swimming League, Ltd. v. World Aquatics*, No. 18-CV-07394-JSC, 2025 WL 3257200, at *1 (N.D. Cal. Nov. 21, 2025) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)); *see also United States v. Valencia-Lopez*, 971 F.3d 891, 900 n.8 (9th Cir. 2020) ("[T]he district court's gatekeeping function under *Daubert* ensures that expert evidence is sufficiently relevant and reliable when it is submitted to the jury." (cleaned up)).  As a gatekeeper, the court's "task [ ] is to analyze not what the experts say, but what basis they have for saying it." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) ("The objective ... is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."). "[J]udges are entitled to broad discretion when discharging their gatekeeping function," including in "determining whether an expert's testimony is reliable [and] in deciding *how* to determine the testimony's reliability." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (quotation marks and citation omitted).

Even so, trial courts should "not exclude opinions merely because they are impeachable." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (quotation marks and citation omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary

United States District Court
Northern District of California

evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).  Ultimately, "[t]he relative weakness or strength of the factual underpinnings of the expert's opinion goes to weight and credibility, rather than admissibility." *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987) (quotation marks and citation omitted).

### III.    DISCUSSION

Here, Defendant seeks to exclude certain expert testimony from Dr. Barry and Dr. Harvey for four reasons: 1) Dr. Barry's causation opinions for Plaintiff's foot, ankle, shoulder, and thumb injuries are unreliable; 2) Dr. Barry's opinions regarding Plaintiff's hip care are unreliable; 3) Dr. Barry's report, served on September 16, 2025, was untimely; and 4) Dr. Harvey's opinions on the cost of Plaintiff's injuries lack foundation. (*See* Def.'s Mot. at 1.)  The Court notes that Defendant has not challenged the respective credentials of Plaintiff's experts, so, for the purposes of this motion, the Court finds that they are qualified.

### A.    Dr. Barry's Opinion

#### i.    Testimony that Plaintiff's foot, ankle, shoulder or thumb were injured in the collision

First, Defendant seeks to exclude Dr. Barry's testimony that Plaintiff's foot, ankle, shoulder, and thumb were injured in the collision. (Def.'s Mot. at 4.)

Dr. Barry opines that:
> [a]s a direct result of the injuries that Mr. Caton sustained when he was struck by the postal truck, he is reasonably certain to require right total hip arthroplasty, right shoulder arthroscopic surgery with rotator cuff repair, right thumb fusion surgery, and foot and ankle surgery to address the painful conditions that have limited him since the collision.

(4/8/25 Report, Swoopes Decl. ¶ 4, Ex. 2 at 1.)  He later opines that "Mr. John Caton continues to have cervical spine, lumbar spine, right shoulder, right thumb, right hip, and right ankle symptoms almost three years after the traumatic accident." (7/31/25 Report at 38.)

Defendant argues that Dr. Barry does not provide a clear explanation as to why he believes the collision injured Plaintiff's shoulder, foot, ankle, or thumb. (Def.'s Mot. at 5.)  In support of this argument, Defendant points to Plaintiff's response to Interrogatory No. 1, which did not mention shoulder, foot, ankle, or thumb injuries. (Pl.'s Interrogatory Responses at 1.)  The Court

United States District Court
Northern District of California

notes that Interrogatory No. 2, however, lists foot and ankle swelling as symptoms and limitations resulting from the incident. *Id.* at 1-2. Defendant argues that if Plaintiff wanted compensation from these injuries, he should have supplemented his interrogatory responses. (Def.'s Mot. at 5.) Defendant further argues that if Dr. Barry's opinion is based solely on the timing of Plaintiff's symptoms, then it is invalid. *Id.* at 5-6.

In opposition, Plaintiff contends that the response to Interrogatory No. 2 and the objective findings on physical examination, diagnostic testing, and the medical records are the foundational facts that Dr. Barry used in forming his opinion. (Pl.'s Opp'n at 6-7.)[2] Plaintiff further argues that this methodology and comprehensive review, when coupled with a temporal relationship between the incident and injury, is sufficient to establish reliability. *Id.* at 7 (citing *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1054 (9th Cir. 2003), *as amended on denial of reh'g* (Sept. 25, 2003) (temporal and geographic proximity sufficient to support expert opinion that oil spill caused oyster mortalities).)

a. Right foot and ankle

The Court excuses Plaintiff's failure to name foot and ankle injuries in response to Interrogatory No. 1, because they were mentioned in Interrogatory No. 2. If Defendant believed that Plaintiff's response to Interrogatory No. 1 was incomplete based on the latter response, counsel should have met and conferred regarding supplementation rather than raising it for the first time in the instant motion. The Court notes that Defendant asked Plaintiff about his foot and ankle pain at his deposition, so there is no prejudice. (*See* Def.'s Reply at 4 (citing Pl.'s Dep., Swoopes Decl. ¶ 12, Ex. 10 at 53:17-25, 184:6-16).)

In his report, Dr. Barry noted that Plaintiff felt significant pain in his right foot and ankle after regaining consciousness immediately following the collision. (7/31/25 Report at 3.) Dr.

---

[2] The Court notes that Plaintiff attached more than one of Dr. Barry's reports as Exhibit B to the supporting declaration of Thomas H. LemMon, while failing to pincite to any particular pages in the opposition, so the Court will not consider any citations to exhibits without pincites. (*See* Decl. of Thomas H. LemMon, Dkt. No. 58-1 ¶ 1, Ex. B.) Indeed, the Court's Civil Standing Order requires that all citations to exhibits include pincites. (Judge Westmore's Civil Standing Order ¶ 6(a) (N.D. Cal. Dec. 19, 2025). In some instances, Plaintiff pincites to Defendant's exhibits, which were all individual reports, so the Court will cite to those exhibits. (*See, e.g.,* Pl.'s Opp'n at 6.) Oddly, however, at the hearing, Plaintiff's counsel stated that he does not know how to pincite.

United States District Court
Northern District of California

Barry provided that Plaintiff consulted with a podiatrist, Dr. Richard Lavigna, on December 12, 2022 for persistent pain and swelling he had been experiencing in his right foot and ankle since the injury. *Id.* at 4.  Dr. Barry's summary, however, is contradicted by the medical records from that visit, which indicated that Plaintiff presented for toenail fungus, and Dr. Lavigna noted that there was "no edema," which means no swelling. (*See* BAFC 15-16, Swoopes Decl. ¶ 6, Ex. 4.) Moreover, in December 2024, Plaintiff testified that the swelling was new, and said he was told by a physician's assistant that his x-rays indicated that the swelling was likely related to how his pelvis had healed from the accident. (Pl.'s Dep. at 53:12-54:20.)  While Dr. Barry does note that the photos of the foot and ankle swelling were taken 11 months after the femur and pelvic fractures, he does not opine that those fractures ultimately resulted in the foot and ankle swelling or provide any other explanation of how the collision was responsible for the swelling. (*See* 7/28/25 Report at 37.)  In opposition, Plaintiff cites generally to Dr. Barry's reports without identifying any other factual basis to support causation. (*See* Pl.'s Opp'n at 6-7.)  At the hearing, Plaintiff argued that Dr. Barry's imaging review shows the injuries, but the imaging review cited does not provide any opinion on causation despite the imaging occurring two years after the accident. (*See* LemMon Decl., Dkt. No. 58-1 ¶ 3, Ex. B. at 38-39.)

Furthermore, Dr. Barry's report states that Plaintiff later underwent a cardiovascular evaluation to rule out a cardiac cause for the persistent swelling, but he does not address what caused the swelling. (*See* 7/28/25 Report at 4.)  While differential diagnosis is a diagnostic tool, it is not a substitute for explaining causation. *See Clausen*, 339 F.3d at 1057 (quoting Stedman's Medical Dictionary 474 (26th ed.1995)) ("Differential diagnosis is 'the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering, by a systematic comparison and contrasting of the clinical findings.'")  As it stands, Dr. Barry opined that the collision must have caused the swelling based on the faulty assumption that Plaintiff experienced foot and ankle pain immediately following the collision.  He provides no other explanation for the foot and ankle swelling.

While Plaintiff's ankle and foot pain could be considered a symptom of the injuries sustained during the collision—rendering Plaintiff's response to Interrogatory No. 2 accurate—Dr.

Barry's reports are silent on how the swelling was caused by the collision. Given the passage of time between the collision and the symptoms, the Court finds that Dr. Barry's reports do not explain how the injuries can be attributed to the collision and allowing him to testify regarding these injuries would only confuse the finder of fact.

### b. Shoulder and thumb

In reply, Defendant argues that the words "shoulder" and "thumb" do not appear in Plaintiff's responses to either Interrogatory Nos. 1 or 2. (Def.'s Reply at 4.) Dr. Barry explained that Plaintiff saw Dr. Eric Stuffman, an orthopedic surgeon from July 25 to August 10, 2023 for ongoing right shoulder pain. (7/28/25 Report at 4.) Dr. Barry's summary of Plaintiff's medical records note limited range of motion in his shoulders as early as October 7, 2022, which was only two days after the accident. *Id.* at 22. The earliest mention of a thumb injury was December 11, 2024, when Plaintiff had an MRI. *Id.* at 17.

The Court notes that these injuries are not identified in Plaintiff's interrogatory responses. (Interrogatory Responses, Swoopes Decl. ¶¶ 3. Ex. 1 at 1-4.) Moreover, Dr. Barry does not explain how these injuries are related to the accident other than Plaintiff denying any prior injuries. (7/28/25 Report at 5.) This is not enough.

Accordingly, the Court grants the motion in part and excludes Dr. Barry's testimony that Plaintiff sustained right foot and ankle, shoulder, and thumb injuries due to the collision.

### ii. Testimony regarding future medical care needs for Plaintiff's hip

Second, Defendant contends that Dr. Barry's opinion regarding Plaintiff's hip recovery needs are unreliable and will not assist the trier of fact, because Plaintiff underwent hip replacement surgery in January 2026, and Dr. Barry admitted at deposition that he had no basis of knowing whether Plaintiff required extended inpatient care or rehabilitation, as originally opined, or whether he was discharged home immediately. (Def.'s Mot. at 9.)

Plaintiff's opposition did not meaningfully address this argument. Nonetheless, Defendant essentially seeks to penalize Plaintiff for having surgery after expert reports were due. That is not reason to exclude testimony regarding the anticipated course of treatment and recovery. If anything, any divergence between Dr. Barry's report and Plaintiff's post-operative care needs

would serve as grounds for impeachment, rather than exclusion. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d at 1044 (expert opinions should not be excluded based on impeachability).

Accordingly, the Court declines to exclude Dr. Barry's testimony on future medical care needs pertaining to Plaintiff's hip.

### iii.    Whether Dr. Barry's report received on September 16, 2025 should be stricken as untimely.

Finally, Defendant moves to strike Dr. Barry's rebuttal report, served on September 16, 2025, as untimely. (Def.'s Mot. at 9.)  The deadline to serve rebuttal reports was August 27, 2025.

Federal Rule of Civil Procedure 26(a)(2)(B) requires the parties to disclose the identity of each expert witness "accompanied by a written report prepared and signed by the witness." "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  The district court has wide latitude to issue sanctions under Rule 37(c)(1). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citing *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico,* 248 F.3d 29, 34 (1st Cir. 2001)).

In opposition, Plaintiff argues that the two-week delay was inconsequential, not prejudicial and was unintentional. (Pl.'s Opp'n at 11.)  Specifically, Plaintiff contends that the report was provided well in advance of any expert depositions and that defense counsel had the report for approximately four months prior to Dr. Barry's deposition. *Id.* at 12.

To the Government's credit, Defendant acknowledges that this delay was not as egregious as the two-year delay in *Yeti by Molly*, 259 F.3d at 1106. (Def.'s Reply at 10.)  In *Yeti by Molly,* the Ninth Circuit upheld the exclusion of the defendant's damages expert, because, while the expert was timely disclosed, his expert report was not provided for two and a half years. 259 F.3d at 1105.  The Court notes that, here, Defendant does not argue that it suffered any prejudice due to the late disclosure, but, instead, rests on the argument that the Court should exclude the report simply because it was late. (Def.'s Reply at 10.)

"The purpose of a 'detailed and complete' expert report as contemplated by Rule 26(a),

United States District Court
Northern District of California

Fed. R. Civ. P. 26 advisory Committee's note, is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial." *Ortiz-Lopez,* 248 F.3d at 35. Even with the two-week delay, Defendant had the rebuttal report several months before Dr. Barry's deposition and before any other experts were deposed, which effectively rendered the delay harmless. Thus, exclusion would be a harsh sanction under the circumstances.

Accordingly, the Court declines to exclude Dr. Barry's rebuttal report. Plaintiff is advised, however, that failing to meet other case deadlines may result in adverse rulings or sanctions.

### B.    Dr. Harvey's Opinion

Finally, Defendant argues that, to the extent that the Court excludes Dr. Barry's opinions, it should also exclude any of Dr. Harvey's cost analysis that relies on those excluded opinions. (Def.'s Mot. at 11; Def.'s Reply at 10.) Plaintiff does not address this argument in his opposition. (*See* Pl.'s Opp'n at 10-11.)

The Court agrees. Since Dr. Barry's opinions regarding Plaintiff's right foot and ankle, shoulder, and thumb injuries are excluded, Dr. Harvey's opinions regarding the cost of care for those injuries are similarly excluded. Her other opinions, however, are not excluded.

### IV.    CONCLUSION

For the reasons set forth above, Defendant's motion to exclude certain testimony of Plaintiff's experts is GRANTED IN PART AND DENIED IN PART. Specifically, Dr. Barry's opinions that Plaintiff's injuries to his foot and ankle, shoulder, and thumb are attributable to the collision are excluded, as is Dr. Harvey's opinion regarding the cost of care for those specific injuries. The motion is denied in all other respects.

IT IS SO ORDERED.

Dated: April 28, 2026

_____
KANDIS A. WESTMORE
United States Magistrate Judge

9